IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-01510-WYD-BNB

AMERICAN CANINE FOUNDATION; and
FLORENCE VIANZON,

     Plaintiffs,

v.

CITY OF AURORA, COLORADO,

     Defendant.

---

## ORDER ON SUMMARY JUDGMENT

---

### I.    INTRODUCTION

THIS MATTER comes before the Court on Defendant's Motion for Summary

Judgment (filed August 31, 2007).  By way of background, Plaintiffs' Complaint for

Declaratory Judgment relates to the passage by the City of Aurora on or about October

24, 2005, of a breed specific law applying to canines which banned the ownership of

certain dog breeds after January 31, 2006.  Plaintiffs allege constitutional violations of

their rights predicated on 42 U.S.C. §§ 1982 and 1983.

The Complaint asserts five (5) claims for relief based on the ordinance.  The first

claim alleges that the definition and identification of restricted breed animals is

unconstitutionally vague and overbroad.  Plaintiffs contend that Aurora's animal code

enforcement officers are unable to properly identify animals defined as "pit bull terriers"

or "restricted breed dogs" and thus must arbitrarily and capriciously enforce the

ordinance. The second claim alleges that the ordinance violates the Commerce Clause and freedom of contract by being burdensome on interstate commerce because the ordinance places restrictions upon pit bulls traveling through the City. Additionally, Plaintiffs claim a violation of their rights to engage in the sale of pit bulls and other restricted breeds. The third claim asserts that the ordinance violates equal protection and impedes substantive due process by discriminating against different classes of individuals without a rational government interest. The fourth claim asserts that the ordinance violates the doctrine of separation of powers by allowing persons without proper training to determine which dogs fit the restricted breed definition. The fifth claim alleges that the ordinance violates procedural due process in not allowing for notice or a pre-seizure hearing and by failing to compensate a party for property seized.

Defendant seeks summary judgment on Plaintiffs' Complaint for Declaratory Judgment. Defendant asserts that the claims under § 1982 must fail because Plaintiffs fail to allege any racial animus toward a racially distinct group. Defendant also argues that Plaintiffs' claims under § 1983 must fail based on the doctrine of *stare decisis* because ordinances which are substantially similar to the City's ban have been deemed constitutional in Colorado, Utah, New Mexico, Washington, Arkansas, and most recently in Ohio. Finally, Defendant asserts that its Requests for Admissions were deemed admitted as Plaintiff did not respond to them and that, given those admissions, Plaintiff cannot establish a claim against the City.

While no response was initially filed to Defendant's motion, I granted Plaintiffs leave to file a response out of time by Minute Order of December 11, 2007. A brief in

opposition to the motion was filed December 27, 2007, which was stricken by Minute

Order of December 28, 2007. An amended response brief was filed on January 4,

2008. A reply brief was filed January 18, 2008. For the reasons stated below,

Defendant's Motion for Summary Judgment is granted in part and denied in part.

II.   FACTS

I first address Defendant's motion to strike which was filed as part of, and as an

alternative, to Defendant's reply. Defendant moves therein to strike the response brief

because the factual sections contain legal argument and do not comport with my

Practice Standards. I deny the motion to strike. While I agree that Plaintiffs' response

does not technically comply with my Practice Standards, I decline to strike it. Instead, I

will simply disregard facts that are not supported by specific reference to material in the

record. Plaintiffs also improperly makes arguments in the fact section. I have stated in

this section only those facts  that are supported by the record and/or are pertinent to

Defendant's motion and my ruling.

Turning to the facts and construing them in the light most favorable to Plaintiffs,

the City of Aurora is a home rule municipality per its Charter. As a home-rule

municipality, the City adopted as a municipal ordinance § 14-75 on October 24, 2005

(hereinafter "the ordinance") which banned the ownership of specific dog breeds

(including pit bull breeds) after January 31, 2006.

While Defendant asserts that the ordinance allows owners of the specified

breeds to obtain special licensing and to "grandfather" their dogs upon compliance with

special requirements, this assertion was denied in part by Plaintiffs. Plaintiffs assert

that the only dogs allowed to be grandfathered were those that applied for and received special licensing within 60 days of the effective date of the ordinance, but as a condition thereof, were required to comport with additional provisions in the ordinance at section 14-75(D).[1]  Failure to comply with any of the conditions results in revocation of the license, impoundment, and disposition pursuant to Subsection (E) of the ordinance, calling for killing the dog, or permanently removing it from the city with conditions. Section (F) of the ordinance (dealing with violation of any of the elements in Section D) subjects the owner of the dog to a misdemeanor criminal offense upon conviction and states that fines imposed in the subsection cannot be suspended.

Plaintiff Florence Vianzon ["Vianzon"] owns a dog which she has licensed under the provisions of the City's ordinance § 14-75(d).  Vianzon is a member of the American Canine Foundation who lives in Aurora, Colorado and who owns a mixed breed of dog restricted by the City's ordinance.  Vianzon concedes that her dog is a half-Staffordshire terrier mix (otherwise known as pit bull).  Plaintiff American Canine Foundation is an organization based out of the state of Washington.

Plaintiffs moved to withdraw the requests for admission that are relied on by Defendant in support of its motion.  By Order of December 11, 2007, Magistrate Judge Boland granted this request and allowed Plaintiffs to withdraw the admissions.  He stated that the admissions are withdrawn and supplanted by the Plaintiffs' Response to

---

[1]  Such provisions include that the owner must have $100,000 liability insurance covering such dog, dog must have microchip implanted, dog must be with an adult present–in the REAR yard of the residence, or shall be confined in a locked, secure pen, AND the rear yard must be enclosed by a six foot fence.  Further, the dog must be muzzled and controlled by a person 21 years of age or older, on a 4 foot lead when not on the owner's property; dog cannot be sold or transferred to another person in the city except a family member; no litter or fancier's permit can be issued to owner.

Defendant's Requests for Admissions, Interrogatories and Request for Production of documents dated approximately March 21, 2007.  *Id.*

III.   ANALYSIS

    A.   Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

    B.   Whether Summary Judgment is Proper in his Case

        1.   Requests for Admissions

I first deny Defendant's motion to the extent it seeks summary judgment on the grounds that its Requests for Admissions were deemed admitted given Plaintiffs' lack of response.  Defendant argued that given those admissions, Plaintiff cannot establish a claim against the City of Aurora.  However, as stated previously, Magistrate Judge Boland issued an Order on December 11, 2007, allowing those admissions to be withdrawn.  Accordingly, that portion of the motion is now moot.

2.      Claim Under 42 U.S.C. § 1982

Defendant argues that summary judgment is appropriate on the § 1982 claims
because Plaintiffs fail to allege any racial animus toward a racially distinct group.  The
Supreme Court holds "that a charge of racial discrimination within the meaning of
§ 1982 cannot be made out by alleging only that the defendants were motivated by
racial animus; it is necessary as well to allege that defendants' animus was directed
towards the kind of group that Congress intended to protect when it passed the statute."
*Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987).

I agree with Defendant that on its face, the City's ordinance has no impact on any
racial group.  Further, Plaintiffs have made no allegations of racial discrimination,
racially disparate treatment, or racial animus toward any group Congress intended to
protect.   In *City of Memphis v. Greene*, 451 U.S. 100, 126 (1981), the Supreme Court
found no violation of § 1982 where the record disclosed no racially discriminatory motive
on the part of the Memphis City Council in taking certain action.  Instead, the record
demonstrated that the interests that motivated the Council (safety and tranquility) were
legitimate.  *Id*.  "Local governments necessarily exercise wide discretion in making the
policy decisions that accommodate these interests."  *Id*.  Here, as in *Greene*, Plaintiffs
have not shown a racially discriminatory motive on the part of Aurora City Council.
Accordingly, I grant summary judgment as to the § 1982 claims.

3.      Claims Under 42 U.S.C. § 1983

I now turn to the § 1983 claims.  Defendant argues that Plaintiffs' claims must fail
based on the doctrine of *stare decisis* because ordinances which are substantially

similar to the City's ban have been deemed constitutional in Colorado, Utah, New Mexico, Washington, Arkansas, and most recently in Ohio. Defendant relies primarily on the case of *Colorado Dog Fanciers v. City of Denver*, 820 P.2d 644 (Colo. 1991), arguing that many of the issues Plaintiffs raise were previously decided in that case. Defendant argues that based on the doctrine of *stare decisis* Plaintiffs' claims on the same issues must fail.

In *Colorado Dog Fanciers*, the court addressed constitutional challenges to Denver's enactment of the "Pit Bulls Prohibited" ordinance. The ordinance, which became effective on August 7, 1989, makes it unlawful for any person to "own, possess, keep, exercise control over, maintain, harbor, transport, or sell within the City any pit bull." *Id.*, 820 P.2d at 646 (quoting § 8-55(a)). The ordinance permits an owner of a previously licensed pit bull to keep the dog only if the owner (1) annually renews a "pit bull license", (2) proves that the dog has been spayed or neutered and has been vaccinated against rabies, (3) keeps the dog confined or securely leashed and muzzled, and (4) maintains $100,000 in liability insurance. *Id.*[2] The dog owners claimed that, under the Fifth and Fourteenth Amendments to the United States Constitution, the ordinance, both facially and as applied to them, violated their rights to procedural and substantive due process and equal protection, was unconstitutionally vague, and constituted a taking of private property. *Id.* at 647.

---

[2] A pit bull was defined under the ordinance as an American Pit Bull Terrier, American Staffordshire Terrier, Staffordshire Bull Terrier, or any dog displaying a majority of physical traits of any one or more of the above breeds, or any dog exhibiting those distinguishing characteristics which substantially conform to the standards established by the American Kennel Club or United Kennel Club for any of the above breeds. *Id.* at 646-47.

The Colorado Supreme Court held that "[l]egislation designed to protect the public's health and safety is entitled to a presumption of constitutionality. *Id.* "A party challenging a public safety law must prove the unconstitutionality of a legislative ordinance beyond a reasonable doubt." *Id.* I address the Colorado Supreme Court's rulings as to specific claims below in connection with an analysis of Plaintiffs' claims.

a.   Vagueness and Overbreadth (First Claim for Relief)

Plaintiffs allege in the first claim that the definition and identification of restricted breed animals is unconstitutionally vague and overbroad.  They contend that Aurora's animal code enforcement officers are unable to properly identify animals defined as "pit bull terriers" or "restricted breed dogs" and thus must arbitrarily and capriciously enforce the ordinance.

I find that summary judgment is appropriate on this claim as I believe the Colorado Supreme Court's decision in *Colorado Dog Fanciers* is controlling.  The court in that case rejected a vagueness challenge, stating that it "did not agree with the dog owners' argument that the term 'pit bull' is imprecise and, thus, unconstitutionally vague because the average dog owner is not afforded fair warning of the act prohibited by the ordinance." *Id.* at 650.  The court also stated, "[t]he fourteenth amendment due process guarantee against vagueness requires that laws provide fair warning to persons of ordinary intelligence of the conduct prohibited, and standards to protect against arbitrary and discriminatory enforcement." *Id.*  It further stated:

> Although the United States Constitution requires adequate notice of
> unlawful acts, it does not require the language of a legislative enactment
> to be mathematically precise. . . .Greater degrees of vagueness are
> tolerated when an ordinance provides for civil rather than criminal

> penalties. . . . Legislation is entitled to a presumption of constitutionality
> and is not 'automatically invalidated as vague simply because difficulty is
> found in determining whether certain marginal offenses fall within [its]
> language.'" *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41
> L.Ed.2d 439 (1974) (quoting *United States v. National Dairy Corp.,* 372
> U.S. 29, 32-33, 83 S.Ct. 594, 597-98, 9 L.Ed.2d 561 (1963)).

*Id.* at 651 (internal citations omitted). "Because the ownership of a dog does not implicate fundamental rights such as speech or association, the ordinance should be upheld unless the dog owners are able to establish that the ordinance is unconstitutional on its face and incapable of any valid application." *Id.*

The court noted that while many of the pit bull ordinances that have withstood vagueness challenges were construed in civil actions, it cited a case that had reviewed a criminal ordinance with penalties similar to those in section 855. *Id.* (*citing Vanater v. Village of South Point*, 717 F. Supp. 1236 (S.D. Ohio 1989)). The ordinance at issue in *Vanater* provided for imprisonment of not more than sixty days or a $1,000 fine, or both. 717 F. Supp. at 1239. The *Vanater* court found that whether a dog was covered by the ordinance was a matter of evidence rather than constitutional law and concluded that the ordinance was not unconstitutionally vague despite its lack of "mathematical certainty." *Id.* at 1244.

Relying on *Vanater* and other cases, the Colorado Supreme Court held that the trial court properly determined that the ordinance provides adequate notice to dog owners and is not unconstitutionally vague "[s]ince the standards for determining whether a dog is a pit bull are readily accessible to dog owners, and because most dog owners are capable of determining the breed or phenotype of their dog." *Id.* at 652. The court also noted that "the ordinance's hearing procedure, as construed with the

burden properly placed on the city to prove pit bull status, provides a sufficient

safeguard to avoid arbitrary application of the law." *Id.*

    *Colorado Dog Fanciers* also rejected the dog owners' challenge that the

ordinance was unconstitutional as it allowed a determination that a dog is a pit bull

based on nonscientific evidence. *Id.*, 820 P.2d at 650. The court held that the city is

not required to meet its burden of proof with the mathematical certainty of scientific

evidence. *Id.* "Therefore, even though section 8-55 permits a finding of pit bull status to

be based on an expert opinion or on nonscientific evidence, such a procedure does not

violate the dog owners' due process rights. *Id.*[3]

    Other cases which have rejected similar vagueness challenges include *Toledo v.

Tellings*, 871 N.E.2d 1152, 1158 (Ohio 2007); *Greenwood v. City of North Salt Lake*,

817 P.2d 816, 819-820 (Utah 1991); *Holt v. City of Maumelle*, 817 S.W.2d 208, 210

(Ark. 1991); and *American Dog Owners Ass'n v. City of Yakima*, 777 P.2d 1046, 1047-

49 (Wash. 1989). I find that these cases are controlling and require that I grant

summary judgment as to the claim that the ordinance is unconstitutionally vague.

    I also find that summary judgment is appropriate on this claim to the extent

Plaintiffs claim that the definition and identification of restricted breed animals is

overbroad. In *Colorado Dog Fanciers* the dog owners also asserted that the city

---

    [3] I note that Plaintiffs assert that the Colorado Legislature passed a law in 2004 (04-HB-1279)
which prohibits breed specific laws in the regulation of canines. Under such breed specific laws, including
the ordinance at issue, all named breeds are considered presumptively vicious regardless of the dog's
actual behavior. Defendant assert that these facts are immaterial to resolution of this motion and I agree.
Plaintiffs do not address in their response how this legislation impacts this case or how it defeats the *stare
decisis* effect of *Colorado Dog Fanciers* and the other cases cited by Defendant. I also find no merit to the
argument by Plaintiff that *Colorado Dog Fanciers* is not controlling because it involved the banning of only
one breed as compared to the multiple breeds at issue here.

ordinance which treats all pit bulls and substantially similar dogs as inherently

dangerous was unconstitutionally overbroad. *Id.* The Colorado Supreme Court found

no merit to this decision. It stated, "[o]utside the limited area of fundamental

constitutional rights such as, for example, first amendment rights of speech or

association, a statute may not be attacked as overbroad." *Id.*[4]

Another case which rejected an overbreadth challenge is *City of Yakima.* In that

case, the Washington Supreme Court found an ordinance constitutional even though

some inoffensive pit bulls might be banned, stating, "[o]verbreadth is only a problem

when it 'reaches a substantial amount of constitutionally protected conduct.'" *Id.*, 777

P.2d at 1048 (quotation and internal quotation marks omitted). "Dogs are subject to

police power and may be destroyed or regulated to protect citizens" *Id.* "Thus,

'property in dogs is of an imperfect or qualified nature'. . . and 'a harmless or inoffensive

American Pit Bull Terrier may be banned in order to abate the threat ... presented by

other American Pit Bull Terriers.'" *Id.* (quotation omitted).

Based on the foregoing, I grant summary judgment as to the first claim in

connection with arguments that the ordinance at issue is overbroad and vague. I note,

however, that to the extent the first claim asserts that the exception is unconstitutional

as it is not substantially related to a legitimate government interest, this is addressed

below in connection with the substantive due process and equal protection claims.

---

[4] In addition, the Colorado Supreme Court did "not agree with the dog owners' contention that the ordinance is underinclusive and, thus, violates due process by failing to include other dangerous breeds." *Id.* "Upon choosing to regulate a hazard, a legislature is not required to simultaneously regulate every similar hazard." *Id.* Thus, the court found that the ordinance does not deny the dog owners was not unconstitutional on that ground. *Id.*

b. <u>Federal Commerce Clause/Freedom of Contract (Second Claim)</u>

As stated previously, the second claim alleges that the ordinance violates the Commerce Clause and freedom of contract. I find that summary judgment is proper on this claim.

The Commerce Clause was addressed in *American Trucking Assocs, Inc. v. Michigan Public Serv. Comm'n*, 545 U.S. 429 (2005). There, the Supreme Court held that "the Constitution's express grant to Congress of the power to 'regulate Commerce ... among the several States,' Art. I, § 8, cl. 3, contains 'a further, negative command, known as the dormant Commerce Clause,' . . . that 'create[s] an area of trade free from interference by the States,'. . . ." *Id.* at 433 (quotations omitted). "This negative command prevents a State from 'jeopardizing the welfare of the Nation as a whole' by 'plac[ing] burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear.'" *Id.* (quotation omitted).

The Supreme Court in *American Trucking* noted that it had "found unconstitutional state regulations that unjustifiably discriminate on their face against out-of-state entities, . . . or that impose burdens on interstate trade that are 'clearly excessive in relation to the putative local benefits,' . . . ." Further, "[s]tates may not impose taxes that facially discriminate against interstate business and offer commercial advantage to local enterprises, . . . that improperly apportion state assessments on transactions with out-of-state components, . . . or that have the 'inevitable effect [of] threaten[ing] the free movement of commerce by placing a financial barrier around the State,' . . . ." *Id.* (quotations omitted).

In the case at hand, Plaintiffs have not shown or presented evidence of a violation of the dormant Commerce Clause. They have not shown, for example, that the ordinance at issue discriminates on its face against out-of-state entities or that the ordinance imposes restrictions on interstate trade. Further, the Supreme Court noted in *American Trucking* that the Constitution does not displace "States' authority 'to shelter [their] people from menaces to their health or safety'." *Id.* at 434 (quotation omitted). Additionally, Plaintiffs cite no authority that have applied the dormant Commerce Clause or a freedom of contract theory to an ordinance similar to this one. Accordingly, I find that summary judgment is proper on this claim.

c.      Substantive Due Process and Equal Protection (Third Claim)

Plaintiffs argue that the ordinance is not rationally related to a legitimate government purpose. I find that this argument impacts the substantive due process and equal protection claim as well as a takings claim encompassed in the Fifth Claim (addressed below in Section III.B.3.e).

The Supreme Court holds that in order to withstand scrutiny under the Fifth and Fourteenth amendments to the United States Constitution, a statute or ordinance must bear a rational relationship to a legitimate legislative goal or purpose. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124 (1978); *Kelley v. Johnson,* 425 U.S. 238, 247 (1976). In this case, it is undisputed that the City of Aurora stated a legitimate purpose in enacting the ordinance at issue—-the protection of health and safety of the public. However, I find that there is no evidence in the record to show that the ordinance at issue is rationally related to that purpose.

While Defendant relies on *Colorado Dog Fanciers* and other cases that have

denied substantive due process and equal protection challenges, they did so based on

evidence presented by the municipality that the ordinance was rationally related to the

stated purpose.  For example, in *Colorado Dog Fanciers* the court stated:

> The trial court found that pit bull attacks, unlike attacks by other dogs,
> occur more often, are more severe, and are more likely to result in
> fatalities. The trial court also found that pit bulls tend to be stronger than
> other dogs, often give no warning signals before attacking, and are less
> willing than other dogs to retreat from an attack, even when they are in
> considerable pain.

*Id.* at 652.  The court thus found that ample evidence exists to establish a rational

relationship between the city's classification of certain dogs as pit bulls and the legitimate

governmental purpose of protecting the health and safety of the city's residents and

dogs.  *Id.*

Similarly, in *Village of Tijeras*, the court found as to the plaintiff's substantive due

process claim that the village had a legitimate purpose in enacting the ordinance—the

protection of the health and safety of village residents—which was undisputed.  *Id.*, 767

P.2d at 358.  While the plaintiffs contended that the ordinance was not rationally related

to that purpose, the court disagreed.  It found that the evidence supported the trial

court's findings that pit bulls presented a special danger to the health and safety of

village residents based on evidence of, among other things, several serious attacks

involving pit bulls, evidence that the pit bull breed possesses inherent characteristics of

aggression, strength, viciousness and unpredictability not found in other breeds of dog,

in a fight or attack they are very aggressive and tenacious, unlike other breeds pit bulls

will "bite and hold", thereby inflicting significantly more damage upon their victim, and pit

bulls are especially dangerous due to their unpredictability. Based on that evidence, the court found that the ordinance banning possession of pit bulls was reasonably related to protecting the health and safety of the residents of the village and did not violate substantive due process.

As to equal protection, the dog owners in *Colorado Dog Fanciers* argued that the ordinance violated the Equal Protection Clause by creating an irrational distinction between one who owns a dog with the physical characteristics of a pit bull and one who owns a dog lacking those characteristics. *Id.*, 820 P.2d at 652. The court stated, "[l]egislation not implicating a fundamental right or involving a suspect class will be upheld against an equal protection challenge if it is rationally related to a legitimate governmental purpose." *Id.* Based on the evidence found by the trial court which established the ordinance was rationally related to a legitimate government purpose of protecting the health and safety of the city's residents and dogs (discussed above), the Colorado Supreme Court found that the trial court correctly concluded that the ordinance did not violate the dog owners' right to equal protection. *Id.*

Similarly, in *Garcia*, substantial evidence was submitted that pit bulls presented a special threat to the safety of the residents of the village over and above that presented by other breeds of dog. *Id.*, 767 P.2d at 361. Accordingly, the court found that there was not an equal protection violation as the ordinance was rationally related to a legitimate state interest." *Id.* Other pertinent cases include *Tellings*, 871 N.E.2d at 1157 (rejecting substantive due process and equal protection challenges as the state and the city have a legitimate interest in protecting citizens against unsafe conditions caused by

pit bulls, "substantial reputable evidence was presented at the trial court" and "[t]he trial court cited the substantial evidence supporting its conclusion that pit bulls, compared to other breeds, cause a disproportionate amount of danger to people—this evidence supports the conclusion that pit bulls pose a serious danger to the safety of citizens and the ordinance was rationally related to the legitimate interests or protecting Ohio residents); *City of North Salt Lake*, 817 P.2d at 820-22 (ordinance rationally related to valid public purpose of public safety as the trial court found, among other things, that pit bull breeds are known for a unique combination of strength, agility, and aggressiveness; the city had experienced a proportionately higher number of bites and attacks by these breeds than by other breeds; animal control treats pit bull breeds differently than other breeds, and because of their reputation, these breeds are often acquired by people with the intent of making the dogs mean and aggressive).

Unlike the above referenced cases, no evidence or facts have been presented as to why the Aurora City Council believed that the ordinance was necessary to protect the safety of its residents. Without such evidence, the principle of *stare decisis* is simply not applicable. I further note that Plaintiffs have cited cases where courts have found that there was not sufficient evidence that pitbull dogs or puppies are inherently dangerous. *See Carter v. Metro North Assocs.*, 680 N.Y.S.2d 239, 251-52 (1998) (finding that court erred in circumventing the requirement for evidence concerning the particular animal by purporting to take judicial notice of the vicious nature of pit bull breeds as there are alternative opinions that preclude judicial notice—"[w]hile many sources, including the authorities relied upon by the IAS Court, assert the viciousness of pit bulls in general,

numerous other experts suggest that, at most, pit bulls possess the potential to be trained to behave viciously. . . .Furthermore, scientific evidence more definitive than articles discussing the dogs' breeding history is necessary before it is established that pit bulls, merely by virtue of their genetic inheritance, are inherently vicious. . . . "); *see also Zuniga v. San Mateo Dept. of Health Serv.*, 218 Cal. App. 3d 1521, 1532-33 (1990).

Based on the foregoing, I find that summary judgment is improper on the basis of *stare decisis* as to the substantive due process and equal protection claims (the Third Claim for Relief). Defendant presented no evidence to support its argument that the ordinance was rationally related to a legitimate governmental purpose.

### d. Separation of Powers (Fourth Claim)

The fourth claim asserts that the ordinance violates the doctrine of separation of powers by allowing persons without proper training to determine which dogs fit the restricted breed definition. Plaintiffs fail to state what aspect of the ordinance offends the doctrine of separation of powers or explain how that doctrine is violated.

Further, while Plaintiffs allege in their claim that the ordinance allows an animal control officer or designee to be solely in charge of determining whether a breed of dog meets the definitional language of the ordinance, this does not appear to be true. Section §14-75(E) of the ordinance states that the Animal Care Division is authorized only to impound a pit bull or restricted breed dog. The ordinance does not authorize designees of the Animal Care Division or Aurora Animal Care to determine whether a dog owner is subject to the ordinance. Instead, upon impounding the suspected pit bull or restricted breed animal, § 14-4(g) confers jurisdiction to the Aurora municipal court in

determining if the dog owner is in violation of § 14-75.  While Aurora Animal Care, as agents of the city of Aurora, may seize an animal, it is the judiciary which makes the ultimate determination as to a dog is or is not a restricted breed and whether the dog owner has violated the ordinance.  Thus, I find that summary judgment is proper as to this claim.

      e.      <u>Procedural Due Process and Takings Claim (Fifth Claim for Relief)</u>

I first address the procedural due process challenge.  Plaintiffs assert that the ordinance at issue violates procedural due process in not allowing for notice or a pre-seizure hearing.  Specifically, Plaintiffs argue that dog owners of certain dog breeds are given a hearing only if the owner requests a hearing–which is given *after* the seizure of the dog.  They further assert that all that will be done at the post deprivation hearing is to determine whether the dog is or is not a particular breed, or whether it has the majority of traits of one of the enumerated breeds.

I grant summary judgment as to the procedural due process challenge.  I find that the *Colorado Dog Fanciers* case is controlling precedent on that issue and precludes the claim.  In addressing the dog owners' procedural due process challenge in that case, the Colorado Supreme Court held that the ordinance was not fundamentally unfair.  *Id.*, 820 P.2d at 648.  The statute provided a post-impoundment hearing for an owner to dispute the classification of a dog where the city bore the burden of proof of pit bull status by a preponderance of the evidence.  *Id.* at 649.  The Supreme Court held that a pre-impoundment hearing was not necessary, and reversed the trial court's imposition of such a hearing.  *Id.*  Accordingly, it found no violation of procedural due process.  *Id.*; *see*

*also Village of Tijeras*, 767 P.2d at 361 (rejecting procedural due process challenge that an ordinance violates due process by failing to provide owners of American Pit Bull Terriers notice and an opportunity to be heard when the ordinance allowed an opportunity to be heard and present evidence prior to destruction of the dog).

Plaintiffs also allege that the ordinance fails to compensate a party for property seized. I find that this is essentially a takings claim, and deny summary judgment as to such a claim. In *Colorado Dog Fanciers*, the dog owners claimed that the ordinance was an abuse of the city's police power and constituted an unconstitutional taking of private property. *Id.*, 820 P.2d at 653. The Colorado Supreme Court disagreed. *Id.* it stated, "[i]n Colorado, dogs are accorded qualified property status, . . . and are, thus, subject to the proper exercise of police power for the protection of the public's health, safety, and welfare." *Id.* "The United States Supreme Court has held that a state can deprive a citizen of property when such deprivation is justified as a legitimate exercise of police power." *Id.*

The Colorado Supreme Court found that "the legislative exercise of police power was legitimate since it was reasonably necessary to preserve and protect the public health, safety, and welfare." *Id.* However, it based this holding on the fact that the trial court's findings were supported by the record, *i.e.*, that the classification of pit bulls as dangerous animals had a rational basis in fact and that the prohibition of their possession bears a rational relationship to the legitimate governmental objective of protecting the public's health, safety, and welfare." *Id.* Based on this evidence, it found

that the "trial court, therefore, properly ruled that section 8-55 was a legitimate exercise of the city's police power." *Id.*

Similarly in *Garcia*, the court rejected a takings claim, finding that a legislative enactment is justified as a legitimate exercise of the police power if it is reasonably necessary to preserve and protect the public health, safety, morals or welfare. *Id.*, 767 P.2d at 361-62. However, the court in *Garcia* found the test was satisfied based on the evidence presented to the trial court, stating "[t]he extent of damages previously inflicted by American Pit Bull Terriers in the Village, coupled with the evidence of the animal's potential threat and unpredictability, furnish such necessity." *Id.* In other words, it cited to the above evidence and found that "the Village has legitimately exercised the police power to curtail a menace to the public health and safety." *Id.*

In the case at hand, as explained in connection with the substantive due process and equal protection claim, no evidence has been presented that the City of Aurora legitimately exercised its police power to curtail a menace to the public health and safety. This is because there is no evidence that the classification of pit bulls or other breeds at issue in the ordinance had a rational basis in fact, *i.e.*, that the breeds in the ordinance are dangerous animals, and that the prohibition of their possession bears a rational relationship to the legitimate governmental objective of protecting the public's health, safety, and welfare. Accordingly, I deny summary judgment as to the takings claim.

IV.    CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  Specifically, the motion is **GRANTED** as to the first claim (vagueness and overbreadth), second claim (commerce and freedom of contract), fourth claim (separation of powers) and the procedural due process claim in the fifth claim for relief.  The motion is **DENIED** as to the third claim (substantive due process and equal protection) and the takings claim contained in the fifth claim.

Dated:  May 28, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge